ELLA A. M. WIGGIN vs. JOSEPH H. MULLEN and others.

Waldo.      Opinion April 14, 1902.

*Real Property.   Parol Gift.   Boundary.   Town-House Lot.   Adverse Possession.*

In 1819, Josiah Stetson gave by parol to the town of Lincolnville a lot of land one hundred feet square for a town-house. The lot was bounded on two sides by highways, and on the other two sides it was not fenced, till within a few years, when the defendants, by direction of the selectmen, erected a fence there. This fence was within the one hundred feet square. The action is trespass for entering and building the fence.

In 1820, Lincolnville built a town-house upon the lot, and has used it as a town-house for town purposes ever since. Plaintiff owns the adjoining land. She claims that the title of the town extended only to the space occupied by the town-house.

Upon all the evidence it is the opinion of the court, that the town has acquired, and now has absolute title to a lot one hundred feet square, according to the original gift. The fence complained of being within that limit, the defendants are not guilty of trespass.

On report.    Judgment for defendants.

Trespass q. c. involving title and boundary lines of town-house lot in Lincolnville.

The case appears in the opinion.

R. W. Rogers, for plaintiff.

R. F. and J. R. Dunton, for defendants.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

STROUT, J.    Lincolnville town-house is located at the corner of the Searsmont and Belfast roads. The defendants, by direction of the selectmen of Lincolnville, a short time before this suit was brought erected a fence upon the two unfenced sides of the town-house lot, which, with the fences upon the two roads enclosed the lot. The space thus enclosed is somewhat less than one hundred feet on either side. The building stands on the southeast corner of this lot. The

plaintiff owns the land north and west of the town-house lot. This suit is trespass quare clausum for entering and building the fence.

The whole contention depends upon the size and boundaries of the town-house lot. Plaintiff claims that the title of the town covers only the space occupied by the building, and defendants claim that it is a square of one hundred feet each way. The case is here upon report, upon which it becomes our duty to determine both law and fact.

In 1819, Josiah Stetson was the owner of the premises now owned by plaintiff, and also the town-house lot. At a town meeting of Lincolnville, on September 20, 1819, it was voted "to build the town-house at the corner near Farwell's. Josiah Stetson agreed to give 100 feet square of land for it to stand on." The town-house now standing was built in 1820, upon the lot at the intersection of the two roads before mentioned, and "has been used as a town-house for town purposes from that time till now." No deed from Stetson to the town is shown, and probably none was ever given.

This vote is contained in what purports to be a book of record of the town, which is found in possession of the town clerk, and by him produced. It contains strong internal evidence of its verity, and there is no evidence to impeach it. Being more than eighty years old, and a public record of the doings of the town, it is admissible as the best evidence attainable of the acceptance by the town, by express declaration, of a parol gift of the land by Stetson. It was immediately followed by the building, by the town in 1820, of a town-house upon the lot, which has ever since been used by it, without objection. *Goodwin* v. *Jack*, 62 Maine, 414, 16 Am. Rep. 473.

It is conceded by the plaintiff that the town has title to so much of the lot as is actually covered by the building. Is it limited to that?

The vote recites that the gift was of one hundred feet square. The town was interested to have a lot large enough, not only for the building to rest upon, but sufficiently large to accommodate the citizens in its use, and for possible needed enlargement in the future. It cannot be supposed that the town would have accepted a lot not larger than the building to be placed upon it. The limit specified in

the vote, was not an unreasonable one, having reference to its convenient use by the citizens. It is evident that the town then understood Stetson's gift to be of a lot one hundred feet square.

Josiah S. Miller, a grandson of Josiah Stetson, seventy years of age, who lived with him in his boyhood, testifies that somewhere from 1843 to 1845, when Josiah Stetson was ploughing towards the town-house, he said to the witness, "when we get down a little further to stop. He said the town owned a piece in there, but didn't say how much." He says they did stop about five rods from the town-house, about where defendants have placed the fence complained of. He also states that on the Searsmont road there was a fence, partly of stone, which came near the town-house, but that "there was a place right close to the town-house where we always drove in,—always a place there." That at town meetings the citizens drove in there, and left their teams. This testimony is corroborated by the witnesses Mariner and Allen H. Miller, both of whom say that they never saw the land within the present enclosure plowed up till within a few years.

Josiah Stetson owned the premises adjoining the town-house lot until April 27, 1853, when he conveyed to Daniel Stetson, excepting from the deed "the lot on which the town-house now stands." Daniel Stetson conveyed the same premises to Samuel W. Heal, July 3, 1855, who conveyed to Mrs. Wadsworth, in 1870, and she conveyed to Thomas B. Wiggin, in 1883, from whom the plaintiff derived title July 4, 1898. It is true that during these years a little grass, of poor quality, and of very slight value, was cut and gathered by these various owners,—but it is evident that this was done, not under a claim of ownership, or as an act of disseisin, because, to a time as late as 1870, when Wadsworth bought, all the prior owners carefully refrained, while cultivating the adjoining land, from doing so on this lot. The town lot had not been enclosed by a fence on the north and west sides, until shortly before this suit was brought, and the line of the lot was not accurately defined upon the face of the earth; but the acts of the several owners for more than fifty years prior to 1870, in all matters of cultivation, were practically outside and not within the one hundred feet square lot, which they all recognized

as the property of the town. That this state of facts existed until 1870, is not controverted by evidence. If then, the original gift was by parol, such occupancy, as of right, by the town for so great length of time and recognized by the adjoining owners, ripened into full title in the town, to the whole lot of one hundred feet square. *Jewett* v. *Hussey*, 70 Maine, 433; *Martin* v. *M. C. R. R.*, 83 Maine, 101; *Wheeler* v. *Laird*, 147 Mass. 421. The cutting of grass, under the circumstances testified to, were not such acts of claim, ownership or adverse possession as interrupted the gaining of title by the town.

Wadsworth acquired title to the adjoining land in 1870. Since then has there been any act of disseisin or adverse possession, to any part of the town lot, sufficient to devest the title of the town? Wadsworth says he "occupied the land up to the wall of the town-house on the two sides adjoining the fields,"—that he ploughed a piece on the Searsmont road, three or four years before he sold in 1883, and that in ploughing, his "horses stopped just before they reached the wall of the town-house." But he refers to a ridge there, apparently made by former ploughing, and evidently the same ridge spoken of by several witnesses, which he thinks was fifteen or twenty feet from the building, but which other witnesses say was about where the fence now is. He also says that he built a "temporary rail fence," at the gap on the Searsmont road, where the inhabitants had been in the habit of driving in to leave their horses at town meetings, and that that fence remained there while he owned "except at town meeting days, of course, it would be removed,"—that "it was necessary for teams to occupy the ground on election days, to have a chance to pass in." He also says he ploughed to the ridge and not beyond it; that he did not know where the line of the town lot was, but he did not claim to own any of that lot. Josiah S. Miller says Wadsworth plowed a little nearer the building than Josiah Stetson had, but not nearer than about three rods. Both of these witnesses appear to have recognized the ridge as at or near the boundary of the town lot. The distance from the west side of the building to the present fence is fifty-two feet. In view of this testimony, we are satisfied that the fence is within the one hundred feet square lot. If

Wadsworth ever plowed or cultivated nearer the town-house than the present fence, it is evident that he did it, not under adverse claim, but in subordination to the use of the town, when its inhabitants had occasion to use it for town purposes. Such use by him was neither adverse nor exclusive, and cannot be regarded as a disseisin. He never claimed any portion of what was in fact the town-house lot.

In 1883, Thomas B. Wiggin acquired title to the adjoining land, and conveyed it to plaintiff in 1898. The description in Wiggin's deed, includes the entire town-house lot, but as his grantor had no title to that lot, he of course could convey none. Since Thomas B. Wiggin acquired title, he and the plaintiff appear to have encroached upon the town-house lot, and plowed and cultivated there to a certain extent. This may have been, and probably was, done under a claim of right, adverse to the town. But it does not appear that their possession of such portion of the lot as they have used, has been exclusive. However this may be, the disseisin, if it amounted to that, has not continued for a sufficient length of time to ripen into title.

Upon all the evidence in the case, we think the gift from Josiah Stetson to the town, was of a lot one hundred feet square, and the title thereto has become and is perfect in the town. The fence complained of is within the limits of that lot, and the defendants are not guilty of trespass in erecting it, under authority of the selectmen.

*Judgment for defendants.*